# CASES

ADJUDGED IN

# THE COURT OF CHANCERY

*OF THE STATE OF NEW-JERSEY.*

OCTOBER TERM, 1839.

---

WILLIAM BAILEY and others v. WILLIAM STILES and wife
and others.

In a case of *spoliation* of a will, equity has jurisdiction, and the will may be established in this court.

In order to establish a will in the court of chancery, all the witnesses to the will, if within the power of the court, must be examined. But if either of the witnesses be dead, or insane, or without the jurisdiction of the court, the will may be established without the evidence of such witnesses.

Under the statute of New-Jersey, it is requisite, to the due execution of a will to pass real estate, that the testator sign his name in the presence of the witnesses.

On a bill filed to establish a will, under a charge of *spoliation*, it is not necessary to prove that the spoliation was committed by the individual charged in the bill, or by whom it was committed. It is enough if the fact of the spoliation be established.

On a bill filed to establish a will devising real estate, the court may grant relief either by making an injunction perpetual, restraining the defendants from prosecuting any suit to disturb the complainants in the possession of their respective tracts, or by directing a release on the part of the defendants of all their right in said lands to be made to the complainants, or by a decree

[Bailey et al. v. Stiles et al.]

establishing the will in all its parts. The last course should be adopted wherever the contents of the will can be ascertained.

THE bill was filed on the 8th of January, 1834, by William Bailey, Mills Bailey, Henry Bailey, Charles Bailey, Ebenezer Bailey, and Caroline Bailey, children of Benjamin Bailey, late of the county of Morris, deceased, against William Stiles and Delia his wife, Abraham Bockover, junior, and Sally Ann his wife, Almira Bailey and Louisa Bailey, in order to establish the will of the said Benjamin Bailey. The bill charges, that the said Benjamin Bailey was, during his life, and at the time of his death, seized in fee of certain mills, and several tracts of land and real estate, in the township and county of Morris; and being so seized thereof, and being of sound and disposing mind and memory, the said Benjamin Bailey, on or about the 21st day of May, 1829, made his last will and testament in writing, and signed and published the same in the presence of three subscribing witnesses, and attested in the manner prescribed by law for devising real estate; by which said will, the said Benjamin Bailey, amongst other things, did give and devise to the complainants, in fee simple, all his real estate, to the purport, and in manner following; that is to say: to the said William Bailey he gave and devised a certain grist-mill and saw-mill, with the privileges, and a certain lot of land called the Hamilton lot, the whole containing fifty-three acres. To the said Mills Bailey he gave and devised a certain farm called the Bailey farm, in the said township of Morris, adjoining Abraham Bockover and others, containing about ninety acres; and certain lots called the Hawkins lot and the Sand-spring lot, containing together about fifty-nine acres. To the said Henry Bailey, a certain farm called the Nesbit farm, in the township of Morris, containing about one hundred and five acres; also, one equal undivided half of the Swamp-meadow, containing thirty acres in the whole, adjoining David Lindsley. To the said Charles Bailey he gave and devised a certain farm called the Vanhouten farm, containing about one hundred and twenty-eight acres—it being part of the farm formerly Peter Sharpenstein's. To the said Ebenezer Bailey he gave and de-

vised the homestead farm where the said Benjamin Bailey then lived, containing about sixty-five acres, and one half of the above mentioned Swamp-meadow. To Caroline Bailey he gave and devised a certain farm called the Glasby farm, in Morris township, containing sixty acres, adjoining the said Nesbit farm. And the said Benjamin did further, in and by his last will and testament, nominate and appoint the said William Bailey and Mills Bailey, executors of his said last will and testament. That the said Benjamin Bailey died on the 6th of June, 1833, without having altered, cancelled or revoked his said will, leaving the complainants, and Sally Ann, wife of Abraham Bockover, junior, and Delia, wife of William Stiles, his children, and Almira Bailey and Louisa Bailey his grandchildren, (the children of his son, John Bailey, deceased,) his heirs at law; and that the said Abraham Bockover, junior, and Sally Ann his wife, William Stiles, and Delia his wife, Almira and Louisa Bailey, severally refuse to join the complainants in the suit, and are therefore made defendants. That the will remained in the possession of the testator, and was kept locked up in a drawer of his desk in his dwelling-house, until the day of his death. That on the day after the funeral of the said Benjamin Bailey, the complainants, William and Miles Bailey, having understood from their father that they were the executors named in his will, went to the desk for the purpose of getting the will, when they discovered that the lock of the desk had been broken open, and also the lock of the drawer in which the will had been kept, and that the will was taken away. That they had repeatedly made diligent search for the will and had not been able to find it, and that it had never been in the possession or under the control of either of them since the death of the said Benjamin Bailey.

That the general contents of the will were known in the family, their father having frequently spoken of them in his lifetime. That Delia Stiles and her husband had expressed themselves dissatisfied with its contents and threatened to destroy it if they could get hold of it. That on the day of the funeral the said Delia, under pretence of sickness, refused to accompany the

family to the funeral, but remained at the dwelling-house of her father, and then and there, as complainants were informed and believe, broke open the desk and carried away the will. That the said Delia, by and with the connivance of her husband, after the death of the said Benjamin Bailey, surreptitiously and clandestinely took the said will, and have either destroyed or do now conceal and suppress the same, by reason whereof it cannot be produced and proven and recorded in such manner as it otherwise would have been under the laws of this state.

That the said Benjamin Bailey, at his death, left sufficient personal estate for the payment of his debts and funeral expenses, with a considerable surplus to be disposed of according to the directions of his will, and that the complainants at his death became entitled to the several premises devised to them respectively in the said will, subject to the dower of the widow of the said Benjamin Bailey, which right of dower the complainants by their bill acknowledge, and profess their willingness at all times to set off the same when requested. That the complainants, on the death of their father, took possession of the said several tracts devised to them in his will, and are now in possession thereof.

The bill prays that the said William Stiles and Delia his wife may be decreed to produce the will of the said Benjamin Bailey, by them or one of them surreptitiously held, or any other will of the said Benjamin Bailey in their or either of their possession, custody or power; or if the will of the said Benjamin Bailey be lost, destroyed or suppressed, that the true contents thereof may be ascertained, proven or established, under the order and decree of the court: that the complainants may be decreed to hold the several parcels of real estate so devised to them, respectively, and their title confirmed to them, their heirs and assigns, according to the true intent and meaning of the said will; that the defendants may be decreed to execute and deliver sufficient deeds of release of their respective rights and claims to the said lands, as heirs at law of the said Benjamin Bailey; and that they may be perpetually enjoined and restrained from setting up any claim or

demand, or from prosecuting any action, as the heirs at law of the said Benjamin Bailey, for the said lands devised to the complainants, or any part thereof.

On filing the bill, an injunction was issued by the advice of Elias Vanarsdale, esquire, one of the masters of the court, (the chancellor, Vroom, having been of counsel in the cause,) pursuant to the prayer of the bill.

Two demurrers were filed to the bill. The first, a general demurrer, for want of equity. The second, by William Stiles and wife, assigning for cause of demurrer, that they could not be called upon to criminate themselves. On the 11th of November, 1834, the chancellor, by and with the advice of Elias Vanarsdale, esquire, master, overruled the first demurrer with costs, and allowed the second, which extends to so much of the complainants' bill as seeks a discovery from Stiles and wife. The cause came on for final hearing before chancellor Pennington, upon the pleadings and proofs, at a special term held in Morris-Town, on the 8th of August, 1839.

*J. W. Miller* and *I. H. Williamson*, for complainants.

*S. Scudder* and *P. D. Vroom*, for defendants.

*J. W. Miller*, for complainants, insisted, that the will of Benjamin Bailey was, in point of fact, duly executed. If, from the whole evidence, the court is satisfied that the will was signed in the presence of the witnesses, it is enough, although the attesting witnesses should deny it. 3 *Stark. Ev.* 1692; *Roscoe's Ev.* 74; 1 *W. Black.* 365.

That the will was not altered or revoked at the testator's death. That it was destroyed by Mrs. Stiles. That the evidence is clear that the will was destroyed, and whether by Mrs. S. or any other person, the complainants are entitled to relief.

That the contents of the will are sufficiently proven. If a paper is destroyed by the heirs, the rule in proving the contents is not as strict as when it is lost by accident. *Toller on Ex'rs,*

70, 71; *Burn's Ecc. Law*, 209; 2 *Eng. Eccles. Rep.* 182; 2 *Campbell's Rep.* 390; 1 *Stark. Ev.* 354, 353, *n. o.*; *Lord Raym.* 731; *Saxton*, 212; 3 *Halsted*, 58.

The oath of the party, after proving its existence, is evidence of the loss. 1 *Caine's Cases in Error*, 27; 16 *Johns. Rep.* 193; 6 *Cowan*, 377; 12 *Johns. Rep.* 192; 1 *Stark. Ev.* 349.

Complainants are entitled to relief, and that without going to law to establish the will. 1 *Madd. Ch. Prac.* 325–6; 3 *Atkyns*, 359; 2 *Vernon*, 380, 561; 1 *Vesey, sen.* 387; 1 *P. Wms.* 731; 2 *Ibid*, 748; 1 *John. Cases*, 417.

In cases of fraud or accident, the court will retain a bill for relief. 1 *Fonblanque*, 12, 15, *in note*.

*I. H. Williamson*, for complainants, cited *Hobart*, 109; *Mitford on Pleading*, 159; 1 *Russell's Rep.* 558; 1 *Dickens*, 32.

A witness abroad need not be examined on commission. *Lord Carrington* v. *Payne*, 5 *Ves.* 411; 2 *Madd. Ch. Prac.* 440.

*S. Scudder*, for defendants, contra. The defendants do not deny the jurisdiction of the court, but they insist that here is no spoliation, or suppression, or fraud. There is no proof, though it is so charged in the bill, that Mrs. Stiles ever threatened to destroy the will, nor that she feigned sickness. The judgment on the demurrer shows that the charge of spoliation in the bill was improperly there. No inference against her is to be drawn from her not answering.

There is no proof that the will was so executed as to pass real estate. The will must be *signed* in the presence of the witnesses. *Rev. Laws*, 7, sec. 2; *Den ex dem. Compton* v. *Mitton*, 7 *Halsted*, 70; *Den ex dem. Mickle* v. *Matlack*, 2 *Harr.* 86. Though the proof be clear that the will was destroyed, yet if it turns out not to have been executed according to the statute, it will avail nothing as to the real estate. Equity requires as much, nay more proof of the execution of a lost will, than is required at law. In equity all the witnesses to a will must be examined. *Cooper's Eq. Cases*, 136; 2 *Madd. Ch. Prac.* 440.

30

[Bailey et al. v. Stiles et al.]

*P. D. Vroom,* for defendants. The complainants' case is not founded on a lost paper, but is a case of *spoliation.* This is a novel and rather an extraordinary case. Very few cases of this nature in the court of chancery are to be found in the books, and no case in New-Jersey.

The complainants must make out the factum of the execution. There is proof of a will, but there is no proof that there was ever one executed according to law to pass real estate. Johnson is a candid observing witness, and he must have observed it had it been signed in his presence. Being a discreet man, and a subscribing witness, his testimony is to be specially regarded. If the will is proved, it must be by a by-stander—a mother, and the peculiar fiiend of the complainants. The testimony of this witness is contradictory and uncertain. The only two witnesses in regard to the execution contradict each other. Can the court on such evidence establish the will against the heir?

It is the rule of this court that the subscribing witnesses must all be produced. In a doubtful case will not the court require the complainants to examine the witness in Ohio, even though it might not be conceded as a universal rule that all the witnesses must be examined?

It is not proved clearly that the will was in existence at the testator's death. The court must say whether the will was taken away by the testator in his life-time, or by Mrs. Stiles. The bill fails unless the charge against Mrs. Stiles is made out. It is not a case for the mere loss of the paper. The loss of a paper is by mistake—the spoliation is through fraud.

The complainants have failed to make out the contents of the will. The paper found among the papers of David Thompson is not a copy of the will, but turns out to be a mere memorandum. The will must be proved. What decree will the court make? The prayer of the bill is as to the real estate alone. There is seven thousand dollars of the personal estate, what is to be done with that? Can a will be established for part? A new will is not to be made for the testator, but *his will* is to be established; not a part of the will, but the entire one.

[Bailey et al. v. Stiles et al.]

*I. H. Williamson,* in reply. The complainants are willing to stand or fall by the charge of spoliation. There is no doubt that a will of some kind was made by the testator : this is agreed to. Was the will executed in such manner as to pass real estate? It is only required that the subscribing witnesses should have been in the room and *might* have seen the will executed. All that Mr. Johnson says is, that he has no recollection of seeing the testator sign the will. He does not say that he did not sign it in his presence. He says it may have been signed and I not remember it. Mrs. Bailey, the widow, fully proves the signing. The court is bound to reconcile the testimony of witnesses. The testimony of an affirmative witness outweighs that of many negative ones.

Must all the subscribing witnesses to the will be examined? Cannot the legal formalities be proved by other witnesses until the testamentary ones are called? At law it is clear you need not bring all the witnesses into court; why should a different rule exist in equity? *Cooper* v. *Blundell, Coop. Eq. Ca.* 138; same case, 19 *Ves.* 505.

The way of proving a will in a case of spoliation must not be wholly blocked up. 5 *Vesey,* 404; 9 *Vesey,* 381.

A will may be proved against the testimony of the instrumental witnesses. *Chase* v. *Lincoln,* 3 *Mass.* 236.

If the rule is inflexible that all the witnesses must be examined, this court will let the case stand over until a commission can be returned, or order an issue of *devisavit vel non. Seaton's Forms of Decrees,* 82.

If there has been spoliation, although not by Mrs. Stiles, the complainants are entitled to relief. If defendants do not answer then one witness is enough. The answer is evasive.

As to the contents of the will; a will must be established to the extent proved, even if you cannot prove the whole of it. There is nothing more than an application to the court to establish this will so far as relates to the devises. The personal estate was to be equally divided. The court will not refuse aid to devisees, merely because the whole of the will cannot be proved. 2 *Vernon,* 216, 441.

The court need not establish the will, but may only continue and make perpetual the injunction against disturbing the devisees. The will need not be established, but only the rights of the complainants. If only the complainants' rights are established, any other party may question the disposition of the personal estate. *Seaton's Decrees*, 63.

THE CHANCELLOR. This is an important cause. The amount of property involved is large, the questions arising new with us, and some of the charges made against one of the defendants of a very serious and distressing character. My desire to come to a just and sound conclusion, has been in due proportion to the magnitude of the case.

The complainants are children (five sons and one daughter) of Benjamin Bailey, deceased, late of the county of Morris, in this state. They allege, that their father at the time of his death was seized in fee of a large real estate, which he devised to them in the manner therein stated, by his last will and testament, duly executed in the form prescribed by the laws of this state. The will is said to bear date on the twenty-first of May, eighteen hundred and twenty-nine, and the testator to have died on the sixth of June, eighteen hundred and thirty-three. They further allege, that their father kept his will locked up in a desk in his own house until his death, immediately after which the lock of the desk and of the drawer in which the will was kept was broen open, and the will taken out and carried away. They further allege, that at the funeral of their father, their sister Delia Stiles, under pretence of sickness, refused to go to the grave, but remained at the dwelling, and then and there, as they are informed and believe, broke open the said desk; and that their said sister, with the connivance of her husband, William Stiles, in this manner clandestinely took the said will, and has either destroyed or suppresses and conceals the same. The bill, after stating this charge of spoliation, prays that the defendants may be compelled to produce to this court the said last will and testament, or that the true contents thereof, in case it be lost, destroy-

[Bailey et al. v. Stiles et al.]

ed or suppressed, may be ascertained and established by this court; or, that the complainants may be decreed to hold the several tracts of land devised to them according to the will, that the defendants may be compelled to execute to them releases of all their right or claim to the same, and be perpetually enjoined from setting up any further claim or demand for the said lands, or from prosecuting any action for the recovery thereof, and that the title of the complainants to the said lands may be quieted and put at rest.

The defendants are two of the testator's daughters with their husbands, and the children of a deceased son, to whom the testator gave no part of his real estate. These defendants met this case in the first instance by two demurrers, one of them denying the whole equity of the bill, and the other as to so much of the bill as charged upon Mrs. Stiles the spoliation of the will, claiming the protection of the court as to Mr. and Mrs. Stiles from answering, on the ground that such answer might criminate them. The first demurrer was overruled by the court, and the last sustained so far as relates to Mr. and Mrs. Stiles. The effect of this decision was to establish in this very case the jurisdiction of the court upon the facts stated in the bill, so far as those facts were well pleaded, and to exempt Mr. and Mrs. Stiles from answering so far as they are charged *criminaliter*, and that without prejudice. The question of jurisdiction was considered on the present argument, and properly so, as having been settled by the decision on the first demurrer, which brought up the whole case made by the bill for discussion and settlement. In a case of spoliation the power of this court is too well settled to admit of further question. 1 *Madd. Ch. Prac.* 325–6; 3 *Atkyns*, 359; 2 *Vernon*, 380, 561; 1 *Vesey*, *sen.* 387; 1 *P. Wms.* 731; 2 *Ibid*, 748; 2 *Story's Eq.* 671.

Taking the power of the court to be established, I proceed to examine and see how far the complainants have sustained themselves by evidence.

1. The first question, and the one which lies at the foundation of all the rest, is, whether Benjamin Bailey left at his death

any last will and testament. I do not mean here to speak of the mode of execution, but did he leave any instrument purporting to be his will? That he made a will in the year eighteen hundred and twenty-nine, there can be no doubt; it has not been controverted by any person. John Johnson testifies, that he witnessed the testator's will a few years before his death. It was drawn by David Thompson, witnessed by him, by Mr. Johnson the deponent, and by Ephraim M. High. William Bailey one of the complainants, and Mrs. Bailey the testator's widow, he says, were present. Mrs. Bailey the widow, (who has in legal form relinquished all claim under the will and elected to take her dower at common law,) confirms the statements made by Mr. Johnson as to the execution of the will, and agrees with him in most of the attendant circumstances. The answer of the defendants admits, that in or about the year eighteen hundred and twenty-nine, without meaning to be particular as to time, they heard that the testator had made a will. There is no evidence that this will was ever cancelled, or in any way modified. Mrs. Bailey says, the testator kept his will in a desk in the entry; it was the same desk in which he kept his most valuable papers, such as bonds and notes. She says she saw the will in her husband's last sickness. He requested that it should be brought to him, and proposed that his son William should take it home with him, and actually gave it to him for that purpose, but afterwards changed his mind, saying it might not look well to take it out of the house, and it was returned to the desk again. This was only three or four days before the testator's death. He died on Friday, and on Saturday, the day after, the widow says she saw the will. This was the day of the funeral. On Monday afterwards she went to the desk and found it broken open. The lock had been pried off. There were marks on it showing that force had been applied; and the will was gone, and she has never seen it since. Upon this evidence it is sufficiently proved that there was a will in existence at the testator's death.

2. The second, and by far the more difficult question to settle,

relates to the *factum* of the execution of this will. The defendants insist, that even if a will is proved to have been made, yet there is no sufficient proof that it was executed in such a manner as to pass real estate under the laws of this state, and especially under the construction placed upon those laws by the supreme court. They deny that the testator signed the will in the presence of the subscribing witnesses. The witnesses, it will be remembered, are David Thompson, who drew the will and who is dead, Ephraim M. High, who has removed to the state of Ohio, out of the jurisdiction of this court, and John Johnson. Mr. Johnson is the only subscribing witness who has been sworn, and before proceeding further it will be proper to dispose of an objection taken by the defendants to any relief being afforded the complainants until they shall have examined all the subscribing witnesses. It is contended that it is a rule of this court, in all cases, that all the subscribing witnesses must be examined on proving the will against the heir. To maintain this position, the case of *Bootle* v. *Blundell*, in *Cooper's Equity Rep.* 136, is much relied on. That was an issue of *devisavit vel non*, directed by the court. After examining one of the subscribing witnesses, the complainant rested his case, saying to the defendant that he would make him a present of the other two. Upon a motion for a new trial, the chancellor declared it to be necessary that the complainant should call all the subscribing witnesses before a will could be established in that court. These witnesses he considered not as the witnesses of either party, but of the court. The witnesses appear to have all been in court, and in such case, or what is the same thing, when they are within the power of the court, they must all be examined. I have no doubt that this is the settled rule. But there are exceptions, and must necessarily be, to the rule requiring the production of all the witnesses ; and it so happens, that the two witnesses not produced in this case, come within the exceptions made in the books to the general rule ; one died, and the other removed beyond the jurisdiction of the court. The case first referred to will be found reported in 19 *Vesey*, 505, and these very exceptions to the gene-

ral rule are there stated.   See.also *Seaton's Decrees*, 62 ; *Lord Carrington* v. *Payne*, 5 *Vesey*, 411 ; *Billing* v. *Brooksbank*, 19 *Vesey*, 505 ; *Chase* v. *Lincoln*, 3 *Mass.* 236.   The like exception to the rule obtains where the witness becomes insane, or has not been heard of for many years and cannot be found.   In the case of a witness being out of the jurisdiction of the court, I am aware there have been different opinions entertained in different courts, but I think the true rule is to consider it as coming within the exceptions.   Such, as it appears to me, is the weight of authority, and it is more consistent with principle.   What power has the complainant over a witness in another state ?   He cannot compel his attendance either before this court or before a commissioner in the state where he may happen to reside.   In the case cited from 5 *Vesey*, it was made a point whether a commission should not be sent abroad to examine the witness, and it was held sufficient to prove his hand-writing.   Had the defendants desired so to do, they would have been entitled to take out a commission to examine this witness, but neither party was bound to do so if they were willing to submit the case upon the other evidence.   We must, then, see how the proof stands as taken.

John Johnson, a subscribing witness, testifies, that he was present at the execution of the will.   He was sent for for that purpose.   William Bailey the son, Mrs. Bailey the widow, David Thompson, Ephraim M. High and the witness, were present. The testator put his hand on the seal and acknowledged that he signed, sealed and published it as his last will and testament. He was of sound mind.   Mr. Thompson and the deponent signed their names, and Mr. High made his mark, as witnesses, in the presence of the testator.   He saw Mr. Thompson sign his name and Mr. High make his mark.   As to the testator's signing the will in the presence of the witnesses, the deponent answers, he does not recollect seeing him sign his name.   He thinks the testator's name was signed to the will when he first saw it.   This witness gives a very rational account of the whole matter, and makes out a complete execution of the instrument, except as to

the signing by the testator, and upon that point he declares he has no recollection of seeing him sign his name. This is the most difficult part of the case. The decision on this subject in the supreme court, requiring the testator to sign his name in the presence of the witnesses, I shall adhere to as the law of this court. The question belongs peculiarly to that court, and its decision must control this. This witness, therefore, fails to make out an essential part of the proof, and without further evidence the case must fail.

But we have another witness who was present, although not a subscribing one, and her evidence becomes very material. This witness is the widow, Mrs. Deborah Bailey. She is the mother of all these children, and she has released all her claim under the will; she is therefore a competent witness, and for aught that appears worthy of credit. She recollects the circumstance of her husband's signing the will. She was sitting behind him, holding him up in bed at the time he signed it. At the time he wrote his name to the will, she swears positively that the subscribing witnesses were present. She also proves the reading of the will to the testator, before the witnesses came in.

These two witnesses, Mr. Johnson and Mrs. Bailey, it is manifest from the depositions, have been pressed by counsel on their examinations very much on this point. It will be seen that they have placed their answers to this part of the case in different shapes, but from a careful and fair view of it all I can give to it no other meaning than this: Johnson answers negatively that he does not recollect seeing the testator sign it, and Mrs. Bailey swears affirmatively that he did sign it in the presence of the witnesses. The rule of law is clear in such case; the affirmative witness must prevail. There is one consideration here worthy of being noticed. The will was executed in the year eighteen hundred and twenty-nine, and the witnesses were examined in eighteen hundred and thirty-five. A period of six years had passed, and it would be no very strange occurrence that even a subscribing witness should not remember every thing that took place at the time of the execution. Mr. Johnson, although evi-

31

dently a very accurate witness, and, judging from his testimony, a cautious and just man, had no interest or feeling in this transaction. The wife of the testator was his nurse, was present, held him up in the bed, and was greatly interested, no doubt, at the time, in all that was passing. This witness not only swears that her husband signed the will in the presence of the witnesses, but states all the circumstances. While the proof is not as full on this point as I could have wished, yet by the rules of law as well as from the whole tenor of the evidence, I must declare the proof in the case to be, that the will was signed by the testator in the presence of the witnesses.

The next matter relates to the fact of spoliation. Was this will in fact, as charged, fraudulently taken away? That there was a will made, and that it was kept by the testator in a desk in his house, is clear. The widow swears that it was in the desk during her husband's last sickness. Only three or four days before his death he requested to have it, and she got the key and her son William went and got the will and brought it to his father. He then told William to take it home with him and keep it. As William was going out of the door he changed his mind, and told him it would not look well to have it taken out of the house, and desired him to put it back again. She also swears that she saw the will again in the desk the day after her husband's death. This evidence is uncontradicted, and there is no proof in the whole case of any cancellation by the testator, or that he ever had any intention of so doing. This was on Saturday, the very day the testator was buried. On Monday morning thereafter the will was gone, and all the witnesses agree that there was on the desk marks of its having been broken open. The charge is, that Mrs. Stiles, one of the daughters, for whom a small provision only was made by the will, while the family had gone down to the grave to bury her father, perpetrated the act. This is a serious charge, and should be sustained by the clearest evidence before it can be believed. The mind revolts at so shocking a transaction. She did not go to the grave; and one witness only, Ira P. Goble, is brought to make out the

charge. He swears that while the family and friends went to the grave he was engaged in carrying chairs up stairs, and while standing at the head of the stairs he saw this daughter, with a trowel, break open this desk and take out a paper. I do not know this witness, nor has his general character been questioned in the evidence; but he stands alone, and there are many grave considerations that enter into the question, so far as the court is concerned, in founding their judgment upon his evidence. He may indeed speak the truth, and yet he may be so placed by his own conduct, and by the attendant circumstances, as to forbid acting upon his statement. The character of the charge, the time when the transaction is alleged to have taken place, his indiscretions, if nothing more, in his conversations with others respecting it, are all open and must be duly weighed and considered. To stamp with infamy the reputation of a party, with the possibility of her innocence, would be a painful reflection. There is much evidence going to show, that in the position in which he stood on the stairs the witness could not have seen what he stated he did see. By varying the position a little, other witnesses declare that he could have seen. One witness, Nancy Conway, swears that she remained at the house while the mourners went to the grave, and she saw nothing of the transaction; and yet it is quite strange that she has no recollection of seeing Goble there at that time at all. Another witness, Stephen Guerin, swears that he had a conversation with Goble, and asked him if he had seen Mrs. Stiles at the desk at the time of the funeral, to which Goble replied he had not. Guerin then told him what he had heard he had said in the neighborhood about Mrs. Stiles taking the will. He said it was a false report; that he had said nothing about it, and knew nothing about it. Another witness, Samuel C. Crowell, says he spoke to Goble about Mrs. Stiles breaking open the desk, and about what he had heard he said she had done. Goble said all he knew about it was of no consequence. Afterwards he told Crowell he knew no more about it than he did.

Upon such a state of facts, I will not say that Mrs. Stiles car-

ried away this will. The evidence is not satisfactory. But I do not consider it necessary, in this case, that I should be able to designate the person who took away this will, if it satisfactorily appears that it has been carried away fraudulently by any person. I have no doubt, and can have none after the evidence of Mrs. Bailey, that a spoliation has taken place. The will was in the desk after the testator's death; it is now gone, and marks of violence are on the desk, showing the lock to have been broken open. It would be a strange failure in the administration of justice, if the devisees under a will should lose their estate when it was clear that a will had been carried off, from the mere fact that they could not detect the robber.

The only remaining point is to ascertain the contents of the will. Here, I must confess, there has appeared less difficulty on investigation than I feared at the time of the argument. The testator had five sons and three daughters living at his death, and two grandchildren, who were the objects of his bounty. These sons were men approaching the middle of life. The eldest was forty years of age. They all labored under their father, and he took all the profits. They all lived at home except William. The testator was also the owner of several distinct farms and places known by certain names. Mrs. Bailey says she heard the will read by Mr. Thompson to her husband, and she recollects that he gave to William the grist-mill, saw-mill, and the Hamilton lot. To Henry he gave the Nesbit farm and half the Swamp-meadow. To Mills he gave the old Bailey farm, the Hawkins lot, and the Sand-spring lot. To Charles he gave the Vanhouten place. To Ebenezer he gave the homestead and half the Swamp-meadow. To Caroline he gave the Glasby farm and one hundred dollars. To Mrs. Stiles and Mrs. Bockover, four hundred dollars each, and a legacy of one hundred and fifty dollars to the two daughters of her deceased son John.

John Conway testifies, that he was a neighbor of the testator, and had a conversation with him about a month before his death in relation to his will. He told him that he had made a will, and went on and specified the different parcels that he had

given the several children, precisely according to the above statement of Mrs. Bailey.

But there is far more certain evidence than even this of the contents of the will. David Thompson, who drew the will, it appears from Mrs. Bailey's evidence, wrote two papers as she thinks, and took the first one he drew home with him. He said it was customary to do so, for fear one might be destroyed. Mr. Thompson is dead, and his brother Stephen Thompson, who is his executor, has produced a paper, which he swears he found among his brother's papers, which is made an exhibit, and is marked Exhibit M. 1, on the part of the complainants. This paper, and the endorsement upon it, are proved to be in the hand-writing of David Thompson ; and by it we find the very same disposition made by the testator of his property, as stated in the evidence of Mrs. Bailey and of Mr. Conway. On this paper is this memorandum, in David Thompson's hand-writing : " Benjamin Bailey—outlines of will, Friday, May 21st, 1829 ; given by him to me ; I wrote the will, and it was executed—witnesses, David Thompson, —— Johnson, —— High. High made his mark." Comparing this memorandum with the whole evidence, there can be no reasonable doubt that this paper contains the will of the testator. All the particulars agree ; the time, the names of the witnesses, the person who drew the papers, and the fact that High, instead of writing his name, made his mark.

In looking at this draft of the will, there is no difficulty about the real estate. The devises are all plainly made, and the same is true of the specific legacies. There is some embarrassment in the clause disposing of the residue of the personal property. The clause on this subject directs it to remain in the family for six years, and then to be divided equally among the four youngest sons, Mills, Henry, Charles and Ebenezer. But there is a bracket enclosing at the side this clause, with the words written, " this altered ;" and at the foot of the writing are added the words, "must remember to divide the personal property." As the first clause, which was to be altered, gave the residue to certain of the

children in exclusion of the rest, and the memorandum at the foot declares that the personal property shall be divided, it can mean nothing else, upon any fair construction, than that it should be divided among all his children, instead of a part, as was at first his intention.    This I believe to be the true meaning of the clause, and with that construction the whole instrument is perfectly intelligible and plain.    At all events, such a view, inasmuch as it favors the defendants, cannot be complained of by them.    On this part of the case I refer to the opinion of justice Baldwin, of the supreme court of the United States, in *Askew v. Odenheimer*, 1 *Baldwin's Rep.* 390.

Entertaining these views of this case, it remains to be considered what relief can be afforded by this court.    The court may grant relief in three ways : by making the injunction perpetual, restraining these defendants from prosecuting any suit to disturb the complainants in the possession and enjoyment of their respective tracts ; by directing a release on the part of the defendants of all their right in said lands to be made to the complainants ; or by a decree establishing the will in all its parts. 2 *Vernon,* 441 ; 1 *Dickens,* 32 ; *Seaton's Decrees,* 63.    The last should be adopted whenever the contents can be ascertained ; and in the present case, being satisfied on this point, I shall adopt that course.

The writing contained in Exhibit M. 1, on the part of the complainants, must be taken as the contents of the instrument— disposing of the residue of the personal property, after paying the specific legacies, among all the children of the testator living at his death.   As the spoliation is not proved to have been committed by the defendants, or any of them, the costs on both sides must be paid out of the testator's estate.

It has been no easy task to settle all the points of this case.    I have done so to the best of my judgment, and, I hope, in a manner consistent with the truth and justice of the case.    There is one view which pervades the whole ; that the testator left a will which has been fraudulently disposed of, and that the complainants should not lose the estate which their father *intended* for them for the want of that aid which every citizen *is* entitled to

have from the judicial tribunals of his country. It was, indeed, said at the hearing, that no great harm could result from a decree in favor of the defendants ; it would only leave the case to the provisions of the law, which disposed of the property equally among all the children. But this is not the true view of this case. Every man has a right to dispose of his property by his last will as he pleases, and the slightest encouragement given to the destruction of these instruments, from the supposed inability of the power of the court to reach the case, would be in the highest degree dangerous and impolitic.

Decree accordingly.